May we excuse you? Of course, thank you. Oh, yeah, which one do you need? This one? You don't have a pad? Well, I have one pad. You can have the whole pad. Can't you write on the back of the page? I could, but now I wouldn't be able to put it there yet. Okay. Mr. Roberts, please proceed. Thank you, Your Honor. May I please the Court? I would like to start today arguing the domestic industry issue. And we believe that this is a unique case because it's the only case where the Commission has found a domestic industry to exist based exclusively on the purchase of a few U.S.-made components, particularly where the petitioner is a foreign company without any engineering or research operations in the United States, and where the product protected by the patent is fully manufactured abroad and imported ready to sell. The purpose of the whole statute is to protect the domestic industry, right? Yes, Your Honor. From the importation of infringing devices. So, what's the domestic industry that's being protected here? I didn't see any argument that there is a lusty domestic industry in the manufacture and sale of these devices in the United States. Is the industry the components, the parts suppliers? Or is the industry... What industry are we protecting here? I'm not sure, Your Honor. I think the ALJBLO found that there is no domestic industry proven in this case. And our point is... I'm talking about what industry are we talking about? Is the industry the parts? For example, the electronics industry? That's a good question, Your Honor. Is it the pigment industry? Or is it the industry that manufactures and sells sex devices? So, I think the statute requires a domestic industry with respect to the product protected by the patent. The product protected by the patent here is the vibrator, the Wevibe. So, one would think that the domestic industry would be in that field, in the manufacturing... But here we're trying to show that that particular industry was harmed as a result of impact upon suppliers to that industry. That's potentially what the commission... He's trying to get the construct laid out. Can I... Oh, I'm sorry. Do you want to respond further? Yeah. I was going to say that the statute requires specific elements under subsection A, substantial investment in plant and equipment. Subsection B would be substantial employment of labor or capital. But there's no requirement that there be actual production within the United States, correct? That is correct, Your Honor. There's no requirement that the actual protected product be manufactured... So, when you look at significant investment in, let's say, plants or in workers, at this point, the ITC precedent is unclear as to whether that includes downstream companies or downstream vendors. I think it's fair to say that the cases show that using suppliers to perform some of the steps, for example, in male prophylactics, using some of the steps with respect to the product that's manufactured abroad, but it's finished in the U.S., the steps performed by the subcontractors would count for the domestic industry analysis. But I think here the problem is that there's no evidence whatsoever under the statutory provisions. We don't have any information about any plant, any equipment, any labor, any capital, none of that. There's evidence of any of that. But the way the commission threw the things together, I'm looking at page 193 of the addendum, page 28 of their opinion. The commission says more of our complainants' investments in these components are indicative, indicative... And that's exactly what we... ...of the investments of the contractors in their plant equipment. And that's exactly what we find is an error, Your Honor. And so you're arguing indicative is not enough, there has to be some actual factual connection? That's right, Your Honor. Between the dollars spent and some of the statutory categories. That's correct, Your Honor. Because otherwise it's too speculative to go from just buying some component to from that amount of investment then determine that there's actually some investment in plant or equipment. It seems to me that your argument, though, kind of takes us back to the point in time when 337 was amended to eliminate a requirement of material injury. Under material injury, you have to find that there's a U.S. domestic industry, U.S. producers, shippers, etc., that have been affected by the Unfair Trade Act. But that's no longer required. No, Your Honor, I don't think that's our argument. I think our argument is that a complainant needs to show that with respect to the products protected by the patent, there is some of the elements of the statute, A, B, or C. There's got to be some showing that there's equipment investment, that there is plant investment, or that there's employment of labor or capital in the United States with respect to that protected product. And here we don't have any evidence of that. We do have a case that says that exploitation, substantial investment in exploitation of the product is enough, that you don't have to have investment in equipment or a plant. That's correct, Your Honor. But that's under Subsection C, which allows a non-manufacturing complainant to show that there's engineering, there's research and development in the United States, and then that product then is manufactured abroad for exploitation or for whatever reason. But the investment is under Subsection C, which Congress added Subsection C exactly because of that issue, that manufacturing in the U.S. is not required. Can I ask you, I'm a little bit confused about the Commission's opinion in this case, and in particular their focus on a qualitative evaluation. They seem to acknowledge that both in terms of sheer dollar value and in terms of percentage of manufacturing costs, that the domestic product or domestic component is, in the words of the Commission, modest. They seem to quite clearly not be relying on either a percentage, I'm going to avoid using numbers, or the dollar value, either one of which, under precedent as I understand it, could have satisfied. $10,000 for a $12,000 product is a substantial investment, even though $10,000 for the new iPhone would not be a substantial investment because it's all relative, and that's what I understand the law to say. So the Commission sort of ran away from the numbers because the numbers wouldn't have established A, B, or C, and instead they moved towards what feels very bizarre to me, when they say they're going to evaluate the domestic industry according to what they seem to be saying is their qualitative view of how important the component that is produced is. The words they use are crucial to the functionality, how important that component is, regardless of whether that involves a substantial investment in planning. I've just never seen any opinion that did this. We agree, Your Honor, and I think that the analysis is improper because the importance is how substantial is the investment in plan or equipment, or how substantial is the investment in employment of labor or capital. But here they're focusing on qualitatively how important are the components to the product, or how important is the purchasing amount to the small company. And I don't even understand the importance feature, right? I imagine that – we'll talk in terms of a VCR instead, right? I imagine that there's a power source that's important. I imagine that there is a processor that's important. There is a viewing. Do they mean important in terms of what they think was the novelty that secured the patent? Do they mean important in terms of the device won't work without this thing? I mean, I imagine the device won't work if you take any one part out of the device, right? Exactly, Your Honor. So I don't even understand how that would apply. It seems like their analysis were more towards the second, that the device won't work without, and there's some testimony about how critical or secret some of these components are to the device. But any complaint can come here and say any one component of our product is important because that's why it's in the product. But the thing is that also doesn't seem to track at all with the statute. Is that your view? Yes. I don't see how importance of a particular feature to either the operation or to the patentability is either A, B, or C. I think that's right, Your Honor. And the problem there is that I think they're using the value-add analysis, which it's intended to measure what is the U.S. value-add to a component that's manufactured abroad. But even that was dollars. Value-added, I went back and looked at every case they cited and a bunch they didn't. And every time the value-added, you're talking about 37 percent of the value, which is equated to the cost or the sales price of the device. It's not value-added in a qualitative sense of will the device work better or not work with this. Is that your understanding of the precedent as well? That's correct. I mean, male prophylaxis does talk about how important the last manufacturing steps are to the components, but to the protected articles. But that's not the case here because we don't have the protected articles. These are just components. You have here four component parts. Your argument is the pigments is that it's unrelated to the patent. That's a separate issue. But what the commission did was to lump together the dollar numbers with regard to all four of the industries that are supplying these parts. So what's your view of the right analysis? For example, let's assume for purposes of argument that you have a $12,000, $15,000 investment over a three-year period in a particular industry that supplies a component, and it's a multibillion-dollar industry. Is your argument that when you say there has to be some connection to the statutory category, then there would have to be some showing that the amount that was spent for that particular supplier is significant or substantial for that particular industry? I think that's right. Although you could take into account the particular industry for which the components are supplied, I think still the measure should be based on the statutory factors. So, for example, where here is the purchasing of just components for any use, I don't think the investment in equipment, for example, let's say the microchip components. Your argument also seems to be that there needs to be some heightened scrutiny where what you're doing is purchasing off-the-shelf products. There's no showing that the product was designed specifically for the product. Mr. Rivera, you're well into your rebuttal time. Please answer Judge Clevenger's question, but then I would suggest you save the remainder of your time. Thank you, Your Honor. I think the point there is that when it's an off-the-shelf component, for example, the plant and equipment, the investment in plant and equipment is not made with respect to the patented article. It's made with respect to the component. So, for example, here the microchip components that are described, the manufacturer may have set up its plant and its equipment years before the patent was even applied for. So that investment cannot be counted towards something that is invested with respect to the patented article. I think that Judge Reyna has an additional question that he'd like to ask. Well, you are pretty much down on your time, and you haven't addressed any of the claim construction issues as well, as important as the other issue is. Maybe you can start very quickly with the preamble, whether it's limiting or not. Thank you, Your Honor. I think the preamble is not limiting in this case because the evidence that the ALJ focused on about the preamble being used during prosecution to distinguish the prior art was based on language that was actually part of the body of the claim at the time those arguments were made. So, initially, the plaintiff had that language as part of the last element of the device claim, and that's when he used that language to distinguish the prior art. But subsequently, through amendments, actually through introduction of a brand-new claim, that language was not used in the body of the claim anymore. And at that point, any distinction over the prior art was based on the last element, the connecting portion, not on the preamble itself. So we don't think that that's sufficient. And then if you look at the specification, the specification talks about many uses of the device, not just single use, particularly when you improperly construe the term intercourse to be just coitus. I think this specification is very clear that there's other uses of similarly shaped objects that would be encompassed by the claim. That's improperly narrowing the claim to one specific embodiment, one specific use that's contrary to the specification. And I'll reserve my time unless you have other questions. No, that's fine. Thank you. Haldenstein? Am I saying it right? Haldenstein. Haldenstein. Good morning. Michael Haldenstein for the International Trade Commission. This is a case of first impression, right? This is the first time the court's had a parts case on the domestic industry issue? It's the first time that this court has addressed a parts case. That's correct. And a big part of the body of the precedent at the International Trade Commission are ALJ opinions, many ALJ opinions that weren't reviewed by the commission? Many of the lower ALJ's opinions are not reviewed. But the commission in this case followed its longstanding practice and approach. The question is perhaps whether or not that longstanding practice is correct. Well, this was a... The adversary has challenged the legal standard that was applied here. Let me say that before 1988, domestic production, whether whole or partial, was a touchstone for domestic industry. And in the 1988 amendments to Section 337, Congress codified the commission practice and subsections A and B of Section 337A3 were enacted to reflect commission practice at that time. But I don't see any evidence of a commission practice that deviated from the quantitative analysis and varied into a qualitative analysis. First off, there's certainly no precedent from this court that authorizes that under the language of this statute. And secondly, even the cases you cite to us, it seems to me, don't stand for that proposition. Well, under this court's decision in Schopper, the commission's value-added analysis was approved. The value-added analysis in that case focused on the amount of money, i.e., the percentage that the particular part and feature added to the overall cost of the product. That was the value-added. Value-added wasn't some qualitative assessment. Like, I don't even understand how in the world you intend to implement this. It would be a disaster for you if we were to affirm this way of evaluating this test. What mechanism are you going to use to ascertain the criticality of the particular function, which is the basis upon which the commission decided to go against the ALJ here? Because the commission rejected the percentages and the dollar values. So how are you going to evaluate this qualitative criticality or importance? Like I said before, VCR doesn't work without the power cord, VCR doesn't work without a process, or VCR doesn't work without an imaging system. I don't understand. Let me just address what you said about the commission rejecting the ALJ's dollar amounts. The commission relied on what the ALJ found in terms of the dollar amounts and the critical nature of the products. Wait a minute. The commission parroted and accepted the fact findings of the dollar amounts and the percentages, but the commission absolutely did not embrace that either of those numbers gave rise to a domestic industry under A, B, or B, and the commission expressly rejected and put note A, C. So how are you now saying, contrary to how I read the opinion, that it is your view that the commission actually said, putting all these qualitative things aside, even if you disagree with them, Judge Moore, that nonetheless on these numbers alone the commission is fine? There is a significant investment in plant and equipment. The numbers the commission relied upon were the same numbers the ALJ relied upon in the value added analysis. And the ALJ said these numbers aren't enough. That's correct. And the commission came along and said, you're right, these numbers are modest, but let's turn to the qualitative significance of the functionality. Absolutely, Your Honor. And the commission has been looking at the qualitative, has been doing a qualitative analysis since early in the 1980s. Where? Show me a case. Okay. Prophylaxis does not do that. It's cast in terms of percentages of value added. And when you go back and actually look at the underlying documents in that case, it is unequivocally clear that it's all about dollars and cents. The 37% at issue that made a difference there was the 37% of the, that's how many dollars, 37% in terms of dollars is what was added by virtue of the feature. So they were still analyzing the overall amount of the investment in terms of real dollars. They were saying this part is, this part adds value because it is 37%, and we think 37% is enough. That's correct. The commission looked at the value added, but it also looked at the process, and the commission said that it's processed. Even though there's value added of 37. 34%. 34%. I was wrong on 37. But it also looked at the realities of the marketplace. Well, can you cite us a case in which they looked not at it from a percentage money point of view, but solely as a quality matter? Well, it's always a combination for the commission. The commission looks at the value added by the U.S. production, which is what it did in this case. The value added is a number, a dollar number. Yes. Can you cite us a case in which they didn't look at that? They said there's a qualitative factor here. It's not monetary. It has to do with the fact that, oh, the iPhone is smooth. The back feels good. Well, yes, it looks like the commission does. Cite me a case in which they use the added value only in the quality of the product as opposed to a monetary value. Well, the commission always looks at both in ways, both the qualitative and the quantitative, the value added by domestic production. And that's what it did here. In the early 1980s – You keep saying always, but you haven't cited a single case or any language in any case where it ever did this, ever. Well, in two puzzles, which is an early case, 1981, cast iron stoves, a miniature toy vehicle – In the miniature toy vehicle case. I pulled that one up on my computer this morning. That's also about percentages. It looked at percentages, but always – That's the way in which it frames the qualitative analysis is the percentage. And they don't use the word qualitative. But it was more than just the commission looked at the nature and significance of what was the domestic activities. In this case – The nature and significance of domestic activities, but that's not what you're looking at. What this commission report looked at was the nature and significance of the component that was made in the U.S., not the nature and significance of the activities in the U.S. You actually parsed out particular components and decided that those components were crucial to the functionality of the device. And because they were crucial to functionality, that that was what drove the whole train because you rejected the numbers. Well, the significance test is with respect to the article. No, actually, it's not. Significant investment in plants and equipment. It's not significant to the article. What the commission has read is that it's a broader test of significance. It's relative – But the commission doesn't get to rewrite the statute, does it? Well, the commission isn't rewriting the statute. So show me where in the statute it says significant to the article. Because the only place the word significant appears is in A and B where it says significant investment in plant and equipment. It seems quite clear what has to be significant. No, it doesn't say with respect to the article. Above, I believe, it says with respect to the article. With respect to the article. Yes. Absolutely right. Significant investment in plant and equipment. But not significant within the article. Is there a significant investment in plant or equipment with respect to the article? But the significance doesn't modify the article. It's not what is significant to the article. It is what is significant in terms of plant and equipment. Well, the commission views it as that it has the discretion to weigh it with respect to the article. And that's what it's been doing. I see this as an extreme outlier case. I don't see any of those cases that you're citing as supporting what the commission did here. I don't believe it's an outlier at all. Counsel, isn't part of the problem here that we're talking about, it's even more fundamental. And I see it as even more fundamental. And that's with respect to, you know, what a domestic industry actually means under the statute. And this is a trade statute. Here we have a situation where we don't have any type of commercial activity in the United States other than distribution by the subsidiary. There's no production. There's no evidence of any type of activity that we normally see in the 337 case. In fact, the producer is located abroad. And all production is conducted abroad. So obviously there's a lot of other parts and components or other parts and components that are being purchased abroad. The problem I'm having, and I think the commission went in its valuation the way it did, simply because there's nobody here in the United States in the context of a U.S. domestic industry. I mean, domestic has to mean something. Industry's got to mean something. So what are we going to see next? A case where there is no presence whatsoever in the United States, no activity. A foreign company, all they have to do is make a couple of purchases in the United States, and then they get standing to bring a 337 case? Well, I disagree that there's no domestic activity. The commission found that there was domestic manufacturing of the components. The components were purchased here in the United States. No, they were manufactured in the United States. But not by the critical components for the article. Not by the complainant. Well, that's what we're talking about. I mean, the petitioners brought a case seeking trade relief under the statute. Your Honor, the commission used it more broadly. Isn't your point that if you had a domestic company that didn't itself manufacture its product, but purchased all of the components and gave the components to a person to put it together for it, that you would look at the investment that was made in the people who were supplying the parts, right? That's correct. I had a question about the issue that was raised by your adversary, that both you and the intervener feel was waived or not raised below. It has to do with the fact that a significant percentage of the dollar numbers that are associated with the four elements, the parts, right, a significant piece of that was expended on product that was sold abroad, that was not sold in the United States. And your adversary says, well, you should take that into consideration in analyzing the numbers with regard to each of the four companies. And you respond very briefly in your brief to that point saying, well, it's waived. Well, assume that you're wrong and that we feel we can consider it, notwithstanding the fact that you say it's waived. Your main argument is that to do so would be inconsistent with the statutory purpose to disregard domestic production of exported particles. That's your brief. You then cite the UNR Industries case, which has to do with the jurisdiction of the Court of Federal Claims. I'd look at your brief at page 28. UNR Industries against the United States, 962, Fed 3rd. Okay. I believe that case was pertinent to disregard. The case doesn't have anything to do with the Court of National Injury. No, but it has to do with the statutory purpose, as I recall the case. The statute should be interpreted with respect to this. But it has nothing to do with the question of whether or not our statute is designed to disregard, right? No, it doesn't, Your Honor. But the point the commission was making was that the requirement. Why is it? Let's assume, for purposes of argument, that 99% of the expenditures in the United States on parts were with respect to product that was sold abroad. The product that's sold abroad has no impact on the domestic industry, right? If it's infringing. The whole idea is that the statute protects the industry from infringing product coming into the United States, right? Well, we read it as also promoting domestic manufacturing. And the question is whether there's a domestic industry reading. Domestic manufacturing, okay. That's producing the article. And the statute is designed to protect. So on your theory, even if no product, if only one item was ever sold in the United States, that would be enough to support domestic expenditures on the part? Yes, yes. Even if there was any, because it's not designed to protect. One other question here. Assume that the court was of the view that it's required in any case to have some connection between expenditures and the statutory categories. That it isn't sufficient simply to say, we think the expenditures are indicative of investment. Then assume that we were to say, I know you don't agree with that, but assume we said that the commission here erred by saying these numbers are indicative of statutory category investment. And what are we looking at? Are we looking at whether or not the $10,000 over three years to a particular parts supplier is significant to that industry? Where are we connecting? How are we trying to decide? Well, the commission, in this case, the commission viewed the $900,000 as- Lumped together. So it's sort of saying there's an industry out there that supply parts to this particular device, right? Correct. And it's sort of the parts, the harm, the amount spent to this parts industry somehow adversely infects the domestic industry for the product, right? I'm not sure I follow. Is there a showing that there's a domestic industry for this product? There is a – the commission found that the domestic industry was the manufacturer of the components, Your Honor. That goes back to my question to you. What is a domestic industry in your view? It's the manufacturing that went on in the United States. To all manufacturers? No, no. Manufacturing of the parts. Of the parts, correct. What about the producers of the components that manufactured the parts? Are they part of the domestic industry? I mean, how far downstream do you go on this? No, it was the manufacturer of the components. But those manufacturers obtained paint or lead or wires, other parts, in order to manufacture those components. Are those producers or those further downstream parts, are they also part of the domestic industry? No, that wasn't an issue. You stop at where Judge Moore was asking about. You stop at this crucial components. You've identified crucial components, and is that where you stop? Just the producers of crucial components are the domestic industry, but the suppliers to the producers of crucial components are not part of the domestic industry? The suppliers to the producer of the article who manufactured the parts are part of the industry in this case. Why don't you, if you're looking at the folks who manufactured the parts for this device constitute the industry, then why don't you look at all the parts? We're trying to decide whether there is a substantial effect, right, on plant investment within this industry. Correct? Well, there's no injury requirement. So shouldn't I be looking at the entire electronics industry or the electronics industry that supplies these particular types of parts? No, you're right. It's not a – there's no injury requirement in the statute. No, but we're trying to decide whether the number is significant. So would you say, for example, that a purchase of $10,000 worth of parts over a three-year period is significant to the software industry in the United States? No, Your Honor, but that's not what the commission has said. It looked at the production of domestic parts versus the foreign production activity with respect to this product, the article, the Webuy. With respect to the patented article, right? That's how the commission has narrowed its numerical analysis, and to the extent it's qualitative, and you're not going to agree with this, you're going to think there are other ways in which it can be qualitative, but to the extent it's qualitative, the commission has said not everything is equal. $10,000 for a particular patented product in a particular industry might be a lot, whereas it's not in another industry a lot of investment. Similarly, 98% is a lot, even if it's a $2 product.  Because across products and across industries, dollars could vary substantially. That's correct, and the commission doesn't just look at significance in terms of dollars. But it seems like percentage would always be static, right? Because if it's 98% of the cost of the product is all here in the domestic industry, that's going to be consistent regardless of what the number of dollars are, right? That's correct. And the commission's qualitative approach that it took is there are many cases, aside from male prophylactics where it noted the realities in the marketplace, other cases like string musical instruments and printing and imaging devices. But that's all the reality of the marketplace. That's not the same thing as what we were talking about before, which is some qualitative analysis of the patent. Because you have a counterpart that wants a few minutes, right? So do you have anything further for the government? Okay. Thank you. Mr. Hughes. Thank you, Your Honor. Paul Hughes for Intervenor Standard Innovation. I'd like to jump right to the significant issue directly. I think the starting point here, which is important, is as the commission recognized, there's no definition of significance that's provided in the statute. So we're very clearly in a Chevron step two question. So I think that's important because the framework to ask is, is the commission's construction of significant investment and significant employment reasonable? But there's a statutory issue here as well, sir. For example, the court might decide that whatever the commission does do, it must make some connection. It must make a tie between a number or a qualitative consideration and one of the statutory factors. Yes, Your Honor. Absolutely. We certainly agree it has to be tethered to the statutory tax. Okay. So where in the commission's opinion is there that tethering? Well, Your Honor, I think that— Other than what I cited earlier where they said, we think these numbers are indicative. Tethering to the investment and to the— To the statutory category. Yes, Your Honor. I think there are a couple different places. By saying it's indicative, I think what the commission is saying is that these are proxy figures, that we know the fact that these components were produced, that there must have been labor that was expended on them. There was plant. There was equipment time that was used for them. That follows— Labor has to be significant, right? Yes, Your Honor. But what's it significant with regard to what? Right. And that's a critical question, Your Honor. Answer it. The commission here said it must be significant with respect to the articles protected by the patent. That is the commission's interpretation of the statute. But where does the statute say that? The word significant modifies investments in plant and equipment. So how could any analysis of the significance that the commission, in its own view, thinks a part is to the patent rather than something else be relevant? I don't see this as a Chevron question because you can't get past step one of Chevron. Well, Your Honor, in terms of what under subprong A, significant investment in plant or equipment, it begs the question, significant with respect to what? And we say our position, and this is what the commission adopted, is that it's significant with respect, and this is from the preamble language above, with respect to the articles protected by the patent. Again, this is a longstanding interpretation. But the articles protected by the patent, that would require analyzing what the investment was in the components that are at issue, in this case produced domestically, versus the other component in the article produced for the patent. It wouldn't be some qualitative evaluation of how important they think these particular articles are to the functionality of the device, which is what the commission said. Well, Your Honor, and we think that the point goes to whether or not the qualitative factors are relevant, and we think that the commission was reasonable in finding that they were. A couple reasons for this. First, I'd like to point to this Court's decision in the Schaffer case. Why are they relevant? What's the legal authority? Sorry, Your Honor. For conducting the qualitative analysis. Well, I'm going to start, Your Honor, with the Schaffer case, which is where I think the commission often points to in suggesting where the qualitative value-add test comes from. Towards the end of the Court's decision, Schaffer... What note is it? Well, Your Honor, I'm just looking at the Schaffer decision directly, and the Court said there's simply not enough significant value added domestically. This is to the toy vehicle there. This is from the Schaffer decision. And so we know that the value-add approach is correct or was endorsed by this Court in Schaffer. But earlier in the decision, when the Court was discussing aftermarket or afterproduction accessories that were added to the toy vehicles that were issued in Schaffer, the Court considered whether or not those accessories were, quote, a necessary part of the vehicles or if they were, quote, integral to them. So in Schaffer, which the commission has continuously cited... But that simply has to do with whether those components ought to be included in the later calculation of how much of this was made in the U.S. versus how much was made abroad. That's what it has to do with. Well, I think it's a bit broader than that, Your Honor. I think it also goes to how critical those components are. And I think that... How critical they are has to go to, in this opinion, whether they ought to be included in the calculation that next takes place. Well, Your Honor, I think that the commission has looked at it a bit differently. I think that it is deserving of deference. Then they're wrong. What they hold is there are two poles. There's the qualitative value-add and there's the quantitative value-add. The commission has been quite clear that there's a sliding scale, that in some cases where there's a... Quite clear in this case because I don't see any other cases from the commission where they've done that. Well, Your Honor, the commission has established this framework in several cases, the printing and imaging case recently, the male prophylaxis case. They explain that these two poles are both important. It is true that this case, the qualitative factors, were more important than they had been in prior cases. But again, I think in understanding... They were the only factors that got the outcome that you wanted because the commission made it clear that they didn't think the numbers got you there. Well, that's right, Your Honor. I think the qualitative factors were critical to the court's analysis. There's no way around that here. But again, what the commission did in looking to the qualitative factors, and I think this is the important part of it, it looked to technology that was just not like, with respect to Your Honor's VCR analogy, where there is a power supply and there might be a dozen different manufacturers making identical power supply. Here, these components are proprietary technology that are produced only by single companies that are in the United States domestically manufacturing them. So again, what's critical about this is that these are very specific components that were purchased by Standard Innovation in order to be integrated into this product. So it's not critical in the sense of, you have to have a power supply to turn it on. It's critical in the sense that this is the best kind of material to make this product work, and there's only one manufacturer, because they have proprietary technology, that's in the United States. That's the meaning of qualitative here, not just... Like it enhances the play value. Sorry, Your Honor.  You started running right over me when I tried to ask you a question. In Schaeffer, there was a question as to whether or not those accessories could be considered for part of the domestic industry. And we concluded that you could not, right? Yes, sir. And we said, well, the accessories are designed to enhance the play value to give a qualitative improvement, right? Yes, sir. And we said, that's excluded, correct? So aren't we saying, in Schaeffer, that something that's value-added in terms of their, they call it the play value here, with regard to the smoothness, making this device a little more insertable or whatever, haven't we already held in Schaeffer that that kind of value-added is not to be included? No, Your Honor, because what was happening in that case, I believe, is that the court was trying to understand were these components part of the articles protected by the patent? Didn't we say on page 1371 of our opinion, we agree with the Commission that the proportion of their business activities related to the production of the stomper accessories, right? Stomper accessories cannot be considered part of any domestic industry, right? Yes, Your Honor. See where it says that? Yes, Your Honor. Now go back and look at footnote 5 on page 1370. Yes, Your Honor. And it says the accessories are designed to enhance the play value, right? Yes, Your Honor. The touch and the feel. But I think that... Significant, it's significant to making this more enjoyable. I think the key distinction, Your Honor, though, and as footnote 5 continues, it says, some of the accessories are the subject of pending patent application. So what? Well, I think the point was, Your Honor, those accessories were not part of the claimed features of the toy vehicle there. What are you talking about? Of course they could be part of the claimed features despite the fact that they're subject to other patents. Your Honor, and I'm sorry, that contention has not come just from that footnote. My reading of the case in whole is that the court had made clear that the accessories that were added to the vehicles were not, as the court viewed it, part of the articles protected by the patent because they didn't relate to the patent claims that were added. In this case... Kind of like pigment. Well, Your Honor, I think pigment... And the Commission did say that it sets less value to pigment because it did note that that was not necessary, but it distinguished that from the other three components, and we agree that the other three components that are directly tied... Just stick with the pigments. We're trying to decide whether or not the proper legal test was applied across the board here, and part of the Commission's decision turns on having included the pigments. Right? And what I'm saying to you is, how can you include the pigments in the light of what we said in Chappell? Well, Your Honor, what the Commission said here was that the pigments are part of the quantitative analysis because those were purchased, and that is part of the number of domestic value-add, but... Quantitative? Yes, Your Honor. What the Commission, as we understand the Commission had done here, was it said there's a quantitative value-add component and a qualitative value-add component. And for the quantitative, it did add up the domestic purchases. For the qualitative, it looked at how important those domestic purchases were to the claimed features of the articles protected by the patent. And it did say that the pigments had assessed less value because those were not directed to particular patent claims, unlike the other three components, which it said were absolutely integral. So the Court did make... Integral how? Because they're really important to having secured the patent? No, Your Honor. They're critical components in two respects. First, because they are key to practicing some of the patent claims, the particular patented features. But second, that they are proprietary... What do you mean by particular patented features? You don't have any patented features. There's no such thing. You have a patent claim which covers the entire device as a whole. There is no patent directed to a particular feature. Yes, Your Honor. The only thing that you've got to patent on is the device as a whole. There are no patent claims that are limited to particular features exclusively. Yes, Your Honor. It's just as the Commission found that the... Now do we want the Commission in the business of deciding which of the features in the claim were the ones that caused the claim to be allowed or improved the device over the prior art? What is it that you want the Commission to get in the business of deciding? Your Honor, when the Commission can find that certain factors are critical to the success of the product, and that's what it found here, that these features, these components were critical to... What does that mean? Critical to the success of the product in terms of how well it sells, in terms of customer demand, in terms of its patentability, in terms of its functionality? What does that mean? Your Honor, I think what the Court found was that this was, again, a very innovative product, a novel product that had great commercial success, and part of that success, the customer demand, the sales, were derived from the fact that... And how does any of that have to do with whether domestic industry would be... Well, Your Honor, I think as the Commission found, it's directly tied to domestic industry because it creates the incentive for companies when they're constructing these products to source their high-value components from U.S. manufacturers. High-value components. That's money. That's dollars. These aren't high-value components. Well, Your Honor, these are proprietary materials, and these are the materials that take the most kinds of research and development because these are novel, innovative materials that are being made by U.S. manufacturers. Okay, so now what the Commission's going to do is assess whether the components are novel and innovative components as part of the process. So I don't see that analysis here. I don't see where the Commission decided that the components, the four components it included as the basis, were novel and innovative. Well, Your Honor, I think that their critical analysis, and I may have overstated the complexity that's involved here, I think what the Commission looks to is in terms of their criticality or whether or not they're crucial to performing the claims and the patented device. And I think the Commission would recognize a distinction between, again, the kind of component that is at issue here that's only made by one particular... Is there a question? Anything else? No. I think that we've exhausted your time. Thank you, Your Honor. Mr. Ribeiro, I think you have a couple minutes of rebuttal time. We went way over with both of them. So if you feel it's necessary, I'll be very generous in extending your time because I feel like we always have to try to be equal. Thank you, Your Honor. I really don't feel it will be necessary. Just a quick couple of points. We just heard a lot of argument about the components being novel materials or being sole source of proprietary material. No evidence in the record whatsoever of any of that. The pigments, for example, the evidence we have in the record is that Sunder Innovation no longer sources the pigment from the United States, and that's A2233. The plastic material for the backbone, the patent says that it can be a metal alloy. So the fact that it's this particular plastic doesn't make it critical, and that's A240 in the record. Well, you're saying there's no substantial evidence in the record to support the Commission's conclusions to the contrary? That's correct, Your Honor, and particularly the argument that counsel has been making about these components being solely sourced from the portfolio. You're saying if that's the test, if he's right about what the test ought to be. The qualitative nature of these components. You're saying it's hard to conclude that's the right test because the Commission wouldn't even have been able to support that test. That's right, Your Honor. That's right, Your Honor. And, you know, the fact that the material is being novel, I mean, the plastics that they're using, it's nothing but novel. There's no evidence in the record of it being novel, and if you actually look into it, it's a very old material used for all sorts of things. The other point is… Petrano was asking questions earlier about parts or components versus the overall device. Would you address that? Could you refresh? I mean, maybe he'd be better at refreshing, but what I understood him to be asking was whether or not the fact that it was domestic companies involved only in the manufacture of components, which could later be used in this product, were the domestic industry worthy of protection under the statute. Is it even possible under these… So suppose that 90% of the parts, which represented 90% of the cost of the manufacture, were each taken from various domestic companies here in the U.S. Would the case be the same? Is this a matter of we should look only at the whole product or individual parts? I'm trying to figure out this issue. That is a difficult question, Your Honor, and the facts here are very different. It's just a few components of very… You don't challenge the fundamental proposition that a domestic industry can be found with respect to parts manufacturers. I do not challenge that premise. The situation would be where a foreign patentee has the product made totally in China and 100% of the parts are sourced from the United States. The fact that the parts are sourced in the United States isn't disqualifying, right? No, I agree with that. Let's say that, for example, there were specific equipment and plants that are set up in the United States just to make these components for the patented product. We have a series of what I'm calling parts cases from the Commission from the past, and I looked at as many of them as I could. In most of those cases, the Commission was making some attempt to tie a number to employment, plant, or something. They're making some attempt to tie up the number into domestic activity, right? That's right, Your Honor. Your argument is they failed to do that here. Right. I think, Your Honor, the other point I wanted to address is this notion of waiver issue. I think the point that we're trying to make is that when the Commission determined that the component purchases on their own are indicative of the statutory factors, the Commission should have accounted for the fact that only a few of those components are manufactured for the product protected by the patent. What do you mean for the product because the product is being imported? For the product that makes it into the United States to be protected by the patent. For example, in... Let me push on that because you made an important argument, at least from your point of view, as lead in your brief, to say in massaging the numbers, trying to decide which numbers are pertinent for substantial investment, you thought the amounts that were representative of a product that was made abroad and sold abroad should be excluded. That's right, Your Honor. Right. Now, are you now saying excluded or simply diminished in significance? Excluded. Well, why? Why is it that... What's the rationale for that? Because if the purchase amount per se is indicative of plant equipment or labor, only the plant equipment or labor that was used to manufacture components used with respect to the product protected by the patent should be accounted for. So only that amount would be indicative of plant equipment or labor to make those components that are relevant to the product protected by the patent. If it's products that are not protected by the patent, like any other product that those manufacturers make components for, that's irrelevant to the domestic industry here. Well, it's a point of first impression. I haven't seen it raised in other cases. Well, I think... I think it would be very, very significant. The briefing from the intervener was a little more fulsome. The government's brief was borderline ludicrous on this point. I think the commission referenced some of its own prior decisions where it was the Kamin and Hinges case. What you're asking for is a ruling from this court, but like in future cases, what we'll do is we'll look at the situation like this where you have a manufacturer who's offshore and where the patentees are around the manufacturers offshore, and you're saying, well, in a circumstance where you get a certain amount of inputs from the United States, only the inputs that were related to product coming in the United States should be considered. So future cases, we'd have to look at the proportion of the accused infringers' sales that are in the United States and that are elsewhere. Well, I think the problem here is that it's not just the inputs. It's the inputs being indicative of the factors under A and B, which is equipment, plant, and labor. That's where the problem becomes, because these manufacturers didn't set up their plants or equipment for producing components for these patented products. They have their plants and equipment, and they use that for production. Right, but they're setting up plant and equipment for perhaps exporting goods to the rest of the world. Sure, but those components are not covered by the patent. And their capacity to be able to be a successful exporter may be harmed, right? But the components themselves are not covered by the patent. Let me make sure I understand something. Suppose that the patent included as one of its components a battery, has to have a battery to operate. And suppose that any AA battery would work, and so they happened to buy the AA batteries from a domestic producer of batteries. Now, AA batteries work in a million different devices. They're certainly not made specifically for this device. Are you saying that, nonetheless, the fact that that component was bought from a U.S. manufacturer is irrelevant and not to be considered because the batteries can otherwise be used for other purposes and weren't specially produced for this purpose? No, Your Honor. What I'm saying is if the purchase price for those batteries is indicative of plant and equipment or labor, only the purchase price that relates to the product protected by the patent should be indicative of the labor used to make those products. That's our argument. The ITC, I believe, uses total purchase price, right? Right. So taking your statements a little bit further, shouldn't there be an allocation here for profit, general and administrative expenses, and things of that nature to pull out that portion of the purchase price that does not account for plants and wages and things of that nature? Absolutely, Your Honor. I think that's the evidence that's missing in this case. But you don't think we necessarily have to go that far, right, because the bottom line numbers are so low that it's, even though they may have erred in doing that, this is a case that is so clear even with that error. Yes, Your Honor. All right. Just to make sure I understand. Okay. Any further? Thank you. And both counsel, or all three counsel, the case is taken under submission. Sends our proceedings. All rise.